ECF5reyC

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  UNITED STATES OF AMERICA,

4             v.                           S1 14 Cr. 483 (LAP)

5  ISRAEL REYES, ALFREDO SANCHEZ,
   ALEXANDER MORILLO, JUAN
6  PIMENTEL, JOSMARIL RODRIGUEZ,
   JEFFERY DUKES AND JOSE CRUZ,
7
                Defendants.
8
   ------------------------------x
9
                                           New York, N.Y.
10                                         December 15, 2014
                                           12:10 p.m.
11

12 Before:

13                 HON. LORETTA A. PRESKA,

14                                         District Judge

15

16

17

18

19

20

21

22

23

24

25

ECF5reyC

1                              APPEARANCES

2    PREET BHARARA
          United States Attorney for the
3         Southern District of New York
     BRENDAN F. QUIGLEY
4    SHAWN CROWLEY
          Assistant United States Attorneys
5
     DANIEL DeMARIA
6         Attorney for Defendant Reyes

7    CARLOS GONZALEZ
          Attorney for Defendant Sanchez
8
     OLIVER STORCH
9         Attorney for Defendant Morillo

10   JEFFREY GRECO
          ATTORNEY for Defendant Pimentel
11
     CESAR DE CASTRO
12        Attorney for Defendant Rodriguez

13   MEGAN BENETT
          Attorney for Defendant Dukes
14

15

16

17

18

19

20

21

22

23

24

25

ECF5reyC                          conference

```
 1          (Case called)
 2          THE COURT:  Is the government ready?
 3          MR. QUIGLEY:  The government is ready.  Brendan
 4   Quigley and Shawn Crowley for the government.
 5          THE COURT:  Good morning.
 6          Is the defense ready?  Counsel for Mr. Reyes?
 7          MR. DeMARIA:  Good morning, your Honor.  We are ready,
 8   Mr. Reyes is present.
 9          THE COURT:  Good morning, Mr. DeMaria.
10          Counsel for Defendant Sanchez?
11          MR. GONZALEZ:  Good morning, your Honor.  Carlos
12   Gonzalez for Mr. Sanchez.  We are ready.
13          THE COURT:  Thank you Mr. Gonzalez.
14          Counsel for Defendant Pimentel?
15          MR. GRECO:  Jeffrey Greco, we are ready.
16          THE COURT:  Counsel for Jeffrey Dukes.
17          MS. BENETT:  Good morning, your Honor.  Megan Benett
18   for Mr. Dukes.
19          THE COURT:  Counsel for Defendant Morillo?
20          MR. STORCH:  Good morning, your Honor.  Oliver Storch,
21   and Mr. Morillo is present in the green shirt.  Good morning,
22   your Honor.
23          THE COURT:  Thank you.  Good morning.
24          Counsel for Defendant Rodriguez?
25          MR. De CASTRO:  Cesar De Castro for Ms. Rodriguez.
```

ECF5reyC                          conference

```
 1   Good morning.
 2           THE COURT:  Has Defendant Cruz appeared, counsel?
 3           MR. QUIGLEY:  No, your Honor.  He is still waiting to
 4   be writted in.
 5           THE COURT:  Thank you very much.
 6           Counsel, do I understand that the first order of
 7   business is to arraign the defendants on the superseder?
 8           MR. QUIGLEY:  Yes, your Honor.
 9           THE COURT:  May I ask defendants to rise, please?
10           MS. BENETT:  Your Honor, sorry, if I may?  Mr. Dukes
11   has already been arraigned on this indictment.
12           THE COURT:  You may be seated, Mr. Dukes.
13           Ladies and gentlemen, have you received a copy of the
14   sealed superseding indictment S1 14 crim 483?
15           DEFENDANT REYES:  Yes, your Honor.
16           DEFENDANT SANCHEZ:  Yes, your Honor.
17           DEFENDANT MORILLO:  Yes, your Honor.
18           DEFENDANT PIMENTEL:  Yes, your Honor.
19           DEFENDANT RODRIGUEZ:  Yes, your Honor.
20           THE COURT:  Have you gone over it with your attorney?
21           DEFENDANT REYES:  Yes, your Honor.
22           DEFENDANT SANCHEZ:  Yes, your Honor.
23           DEFENDANT MORILLO:  Yes, your Honor.
24           DEFENDANT PIMENTEL:  Yes, your Honor.
25           DEFENDANT RODRIGUEZ:  Yes, your Honor.
```

ECF5reyC                     conference

1              THE COURT:  Would you like me to read the whole thing

2    out loud here in court or is it sufficient that you have talked

3    with your attorneys about it?

4              (All defendants spoke at once)

5              THE COURT:  I think I heard, "It is sufficient."  And

6    I heard, "I have talked to my attorney."

7              Is there anyone who wants me to read the whole thing

8    out loud?

9              DEFENDANT REYES:  No, your Honor.

10             DEFENDANT SANCHEZ:  No, your Honor.

11             DEFENDANT MORILLO:  No, your Honor.

12             DEFENDANT PIMENTEL:  No, your Honor.

13             DEFENDANT RODRIGUEZ:  No, your Honor.

14             THE COURT:  How do you now plead, Defendant Reyes?

15             DEFENDANT REYES:  Not guilty.

16             THE COURT:  Defendant Morillo.

17             DEFENDANT MORILLO:  Not guilty.

18             THE COURT:  Defendant Rodriguez?

19             DEFENDANT RODRIGUEZ:  Not guilty.

20             THE COURT:  Defendant Sanchez?

21             DEFENDANT SANCHEZ:  Not guilty.

22             THE COURT:  And Defendant Pimentel?

23             DEFENDANT PIMENTEL:  Not guilty.

24             THE COURT:  Won't you be seated, ladies and gentlemen?

25    Thank you.

ECF5reyC                          conference

1              Ladies and gentlemen, in light of the superseder I

2      understand that you would like to adjourn the motion schedule

3      to have defense motions due March 2, opposition April 3,

4      replies April 10, and oral argument and/or a conference on

5      April 21 at 10:00 a.m.; is that correct, counsel?

6              MR. DeMARIA:  Yes, your Honor.

7              MR. GONZALEZ:  Yes, your Honor.

8              MR. GRECO:  Yes, your Honor.

9              MR. DUKES:  Yes, your Honor.

10              MR. De CASTRO:  Yes, your Honor.

11              MS. BENETT:  Yes, your Honor.

12              MR. STORCH:  Yes, your Honor.

13              THE COURT:  Any objection to that schedule?

14              MR. DeMARIA:  No, your Honor.

15              MR. GONZALEZ:  No, your Honor.

16              MR. GRECO:  No, your Honor.

17              MR. DUKES:  No, your Honor.

18              MR. De CASTRO:  No, your Honor.

19              MS. BENETT:  No, your Honor.

20              MR. STORCH:  No, your Honor.

21              THE COURT:  Very well then.

22              With respect to time?

23              MR. QUIGLEY:  Your Honor, the government would move to

24      exclude time between now and April 21st to allow the parties to

25      contemplate the filing of any motions, to make those motions,

ECF5reyC                       conference

 1    and to allow them to review the discovery that has already been

 2    produced.

 3              THE COURT:  Any objection to the exclusion of time

 4    through April 21?

 5              MR. DeMARIA:  No, your Honor.

 6              MR. GONZALEZ:  No, your Honor.

 7              MR. GRECO:  No, your Honor.

 8              MR. DUKES:  No, your Honor.

 9              MR. De CASTRO:  No, your Honor.

10              MS. BENETT:  No, your Honor.

11              MR. STORCH:  No, your Honor.

12              THE COURT:  Thank you, ladies and gentlemen.

13              Is there other business for all the defendants other

14    than Mr. Reyes?  Any more business for anyone else?

15              MR. STORCH:  No, your Honor.

16              MR. GRECO:  No, your Honor.

17              THE COURT:  All right.  Everyone except for Mr. Reyes

18    and the counsel and the government are excused.

19              MS. BENETT:  Thank you, your Honor.

20              MR. GRECO:  Thank you, your Honor.

21              MR. De CASTRO:  Thank you, your Honor.

22              MR. STORCH:  Thank you, your Honor.

23              MR. GONZALEZ:  Thank you, your Honor.

24              THE COURT:  Thank you, counsel.  Good morning.

25              Counsel, I have the government's letter dated December

ECF5reyC                    conference

12 with the various attachments and I have Mr. Reyes' letter

dated December 15 with the attachments.  Are there additional

written materials I should be looking at?

        MR. QUIGLEY:  Not from the government, your Honor.

        MR. DeMARIA:  No, your Honor.

        THE COURT:  Very well.  Would you like to be heard on

this issue?

        Mr. Quigley.

        MR. QUIGLEY:  Yes, your Honor.  We don't have too much

to add beyond what is in our written submission.  We think

there is very strong evidence that Mr. Reyes' organization

continued to operate even after he had been released on bail,

on house arrest.  Just to respond, a few points made in the

defense submission this morning, or three points, actually:

        Number one, our position didn't change -- or as a

result of Mr. Duke's arrest our position is and always has been

that Mr. Reyes should be detained.  There was a reference to

the fact that with respect to this common call analysis these

could be relatives or friends.  I just note that a large number

of the calls on the 3079 phone was the phone that Mr. Reyes had

that we were up on the wiretap on.  A large number, a

significant percentage were pertinent and appeared to be drug

transactions.  That was not a phone that was generally used for

any type of personal use and we have identified and I pointed

this out to --

ECF5reyC                         conference

1          THE COURT:  Defense counsel.

2          MR. QUIGLEY:  Yes, defense counsel -- thank you, your

3     Honor -- beforehand, at least a number of customers, I had

4     given him the common call analysis and pointed out a number of

5     individuals who we know -- we don't know in some cases their

6     real names but we know from the interceptions that they were

7     customers of the organization who were both calling the 3079

8     phone and Mr. Dukes' phone.

9          THE COURT:  May I interrupt you for a minute?

10         The defense letter says on page 3 in the second

11    paragraph, "It is telling that the government has not provided

12    the defense with a list of these 20 numbers, that is, the 20

13    numbers that were in contact with Mr. Reyes' 3079 phone and

14    Mr. Dukes' 9568 phone -- it continues -- which effectively

15    precludes the defense from providing the Court with a detailed

16    explanation."

17         Did I understand you to say, Mr. Quigley, that you

18    shared with defense counsel the numbers so that he was able to

19    see whose they were?

20         MR. QUIGLEY:  Yes.  I gave him the actual common call

21    analysis before today's proceeding, your Honor.  Yes.

22         THE COURT:  Thank you.

23         MR. QUIGLEY:  And then just a final point and, again,

24    to respond to something in the defense submission.  There was a

25    reference to flights that Mr. Reyes took to Florida during the

ECF5reyC                              conference

1    time when he was supposedly selling drugs to the confidential

2    source and what happened in those transactions is that the

3    confidential source called Mr. Reyes, ordered up some drugs and

4    then somebody else, Mr. Morillo, actually provided Mr. Reyes

5    with the drugs and we think that actually supports our argument

6    or our belief that Mr. Reyes is capable of controlling or

7    operating his drug trafficking organization from a distance and

8    through other people, and it supports why detention as opposed

9    to continued home incarceration is appropriate here.

10           THE COURT:  Just out of curiosity, I assume those

11   flights to Florida were approved by the pretrial services

12   officer?

13           MR. QUIGLEY:  These flights to Florida were before

14   Mr. Reyes was arrested.

15           THE COURT:  Mr. DeMaria?

16           MR. DeMARIA:  Yes, your Honor.  I will be a bit more

17   lengthy than the government was.

18           Mr. Reyes was arrested on July 9, 2014.  He was bailed

19   on conditions.  He has been in perfect compliance with those

20   conditions.  The government noted in its letter that they were

21   seeking to re-open under 18 U.S.C. 3142.  That is not the

22   proper procedure.  The proper procedure is 3148 which is a

23   two-step inquiry; first, is there probable cause to believe

24   Mr. Reyes has committed any crime while on release, or has he

25   violated any other bail conditions?  We submit:  No.  And the

ECF5reyC                        conference

```
 1    government has provided three reasons in its letter as to why

 2    Mr. Reyes' bail should be revoked:  First, the arrest of

 3    Jeffrey Dukes; second, three kilos which were allegedly found

 4    at Mr. Reyes' apartment.

 5              THE COURT:  Do we have any doubt they were found

 6    there?

 7              MR. DeMARIA:  We deny that it was Mr. Reyes'

 8    apartment, your Honor.

 9              THE COURT:  Do we know what apartment the drugs were

10    found in?

11              MR. DeMARIA:  Pardon me, your Honor?

12              THE COURT:  Is there any doubt which apartment the

13    drugs were found in?

14              MR. DeMARIA:  I do not believe so.  No.

15              THE COURT:  And what is your position on whether it is

16    or isn't Mr. Reyes' apartment?

17              MR. DeMARIA:  My position is that it is not his --

18              THE COURT:  Remind me the address please, sir?

19              MR. DeMARIA:  It was on Crotona --

20              MR. QUIGLEY:  1497 Crotona Place, your Honor.

21              THE COURT:  Thank you.

22              And your position is what?  That he was still living

23    with his mother at that time?  Where do you say he was living?

24              (Defendant and counsel conferring)

25              MR. DeMARIA:  He resided in Florida and was going back
```

ECF5reyC                        conference

and forth between Florida and his mother's apartment where he

is presently staying at 1561 Rhinelander Avenue.

THE COURT:  What is the government's position on how

this was Mr. Reyes' apartment, please?

MR. QUIGLEY:  Your Honor, well, first he was in the

apartment when they went in to execute the arrest warrant.  He

had been observed there numerous times on surveillance.  I

think there were pieces of mail that were produced in discovery

that were addressed to him there.  Ms. Rodriguez, who is not

only his co-defendant but his fiancee, was also there along

with some of the other defendants.  I believe that there were

some clothes -- children's clothes and things of that nature

that we provided to -- after the operation that were provided

to the family because they couldn't use the apartment anymore.

THE COURT:  Mr. DeMaria, is your statement that it

wasn't defendant's apartment sufficient to raise an issue here?

MR. DeMARIA:  It is, your Honor, for two reasons.

First of all, I think we got a bit side-tracked by my

making that point but the primary issue is that this was an

issue which the government raised with Judge Peck more than

five months ago.  They wrote a letter asking that the initial

bail decision be stayed and one of the reasons was because of

the three kilos.  So, this is clearly not an appeal, that's why

we are under 3148 and not 3142.  This is not an appeal of the

initial order.

ECF5reyC                        conference

1          THE COURT:  Right.

2          MR. DeMARIA:  So, I don't think it makes a difference.

3      I do just want to say that there are no pictures or

4  any other evidence of Mr. Reyes entering the apartment that we

5  have received in discovery.

6          The third reason why the government purports to want

7  to have Mr. Reyes' bail revoked is because there was some

8  uncertainty at the time of his presentment and, as I noted a

9  moment ago, both those points were written in a stayed letter

10 five nights ago, and third time barred.  Now they simply should

11 not be raised at this point.

12         If you look back, the government did make those two

13 points.  An issue for this hearing suggests that the Dukes'

14 arrest is not strong enough and the bail revocation and that

15 the evidence is insufficient.  Neither these superseding

16 indictments nor anything else bring new charges against

17 Mr. Reyes.  There is simply no proof or any evidence that he

18 has committed a crime.  The indictment does not add any further

19 allegations against him.  And while the common call analysis

20 which I received right before your Honor came does show some of

21 the same numbers were called, as I noted in my letter they're

22 brothers, they could be family members and friends and that is

23 exactly what we say they are.

24         THE COURT:  What do you say to the government's

25 representation that the business conducted on the 3079 phone

ECF5reyC                          conference

1    was not personal but was drug-related?

2              MR. DeMARIA:  First of all, I deny that Mr. Reyes was

3    ever using the 3079 phone to conduct any elicit activities on

4    the wiretap which we have searched.  There is a number of

5    voices.

6              THE COURT:  Generally, there are two voices on a phone

7    call, counsel.  They can't all be Mr. Reyes.

8              MR. DeMARIA:  What I meant, your Honor, is there is

9    different people who answer the 3079 phone, most of the calls

10   we got were incoming calls with some outgoing ones and there is

11   markedly different voices for whoever is purported to be using

12   the 3079 number.  That is what I meant when I said they can't

13   I.D. Mr. Reyes.

14             THE COURT:  I understood, and I guess Mr. Quigley can

15   correct me if I am wrong, but I understood the government to be

16   representing that there were phone calls on the 3079 phone

17   where Mr. Reyes was conducting drug business and, in addition,

18   that there were few, if any, personal calls, calls of a

19   personal nature, on that phone.

20             Do you deny that?

21             MR. DeMARIA:  Your Honor, there were a lot of calls

22   which were suspicious in nature on the 3079 phone.  The issue

23   is it was not under Mr. Reyes' name and that there were other

24   people using it and we say he was not using it at all.

25             THE COURT:  He wasn't using it at all is your

ECF5reyC                              conference

 1    position?

 2              MR. DeMARIA:  Not for any drug business at least.

 3              THE COURT:  Mr. Quigley?

 4              MR. QUIGLEY:  Your Honor, just a couple of things.

 5         On the issue of the address, I was just actually

 6    looking back at our search warrant application for that address

 7    and Mr. Reyes listed 1497 Crotona Place as his address in

 8    connection with an airplane trip to Florida and he also used it

 9    in connection with the purchase of a car which he bought I

10    think a few days before we executed the arrest operation.

11         So, that's -- look.  I think --

12              THE COURT:  Is that stale information, though, that

13    that address was used for the purposes you mentioned?  Was that

14    address information known at the time you were before Judge

15    Peck?

16              MR. QUIGLEY:  Yes, your Honor; that was.  Yes.

17              THE COURT:  So, counsel says that that is not

18    sufficient to bring up now because this is not an appeal from

19    Judge Peck's original order.

20              MR. QUIGLEY:  Right, moving on the basis of the

21    changed circumstance, 3142, which is an appropriate vehicle for

22    moving.

23         In our letter the main changed circumstance is the

24    evidence that this organization was continuing to operate

25    despite Mr. Reyes' arrest and the other changed circumstances

ECF5reyC                        conference

1    are the seizure of three kilograms of heroin from that

2    apartment.  That search was --

3             THE COURT:  Excuse me.  I'm sorry I'm interrupting

4    you, but I guess you were going to tell me when that search was

5    executed.

6             MR. QUIGLEY:  That was ongoing.  That was ongoing as

7    we were before Judge Peck at the time, it had not yet been

8    completed yet.

9             THE COURT:  I don't think I saw in the transcript

10   before Judge Peck the three kilos.

11            MR. QUIGLEY:  It was not because we didn't know it had

12   been seized yet.

13            What happened is the agents on the morning of July 9th

14   the agents went in because they knew -- they believed Mr. Reyes

15   was living at that address.  They executed arrest warrant, they

16   found a number of defendants there.  They brought them down.

17   When they went in they saw drug paraphernalia in plain view.

18   Some of the them stayed there, they froze the apartment.  We

19   got a search warrant, then the agents went back up to the Bronx

20   to execute the search warrant while the defendants were being

21   presented.  So, the search warrant was not complete, the

22   execution was not complete at the time Mr. Reyes was presented.

23            THE COURT:  So, Judge Peck didn't know about the three

24   kilos?

25            MR. QUIGLEY:  Correct.  Yes, your Honor.  Yes.

ECF5reyC                         conference

1          And the third changed circumstance here, the issue

2     that has been clarified is that Mr. Reyes was in fact convicted

3     in the Bronx of three different offenses and that was not

4     reflected in the transcript, not entirely clear from his rap

5     sheet at the time of his presentment.

6          THE COURT:  Mr. DeMaria, do you have any further

7     comment on the use of the telephone, the 3079 telephone, since

8     Judge Peck's bail determination?

9          MR. DeMARIA:  That phone was seized by the agents and

10    was not used by Mr. Reyes following his arrest.

11         THE COURT:  Mr. Quigley, may I ask you what is the

12    basis of the government's suggestion that Mr. Reyes was

13    directing the drug organization since his arrest, please?

14         MR. QUIGLEY:  Your Honor, the commonality of -- well,

15    number one, that we know that Mr. Dukes was in fact selling

16    heroin to Mr. Cruz who we believe was a customer of the drug

17    trafficking organization; that the NYPD observed them on

18    November 14th and that Mr. Cruz was using a phone that is the

19    9568 phone which has a high, as we say in our letter,

20    correlation of calls between -- there were a higher correlation

21    of calls between that phone and a phone Mr. Reyes was using,

22    was seized from either his person or that apartment on July

23    9th, the 3079 phone, and not just innocent calls but calls that

24    the government knows through the wiretap were people who were

25    buying drugs from this organization.

ECF5reyC                    conference

1          It is also not, as we say in our letter, Mr. Dukes and

2     Mr. Reyes are not strangers.  In fact, Mr. Dukes was living at

3     the time in the residence where Mr. Reyes was in house-arrest.

4     So, it seems extremely unlikely, frankly, that all these

5     customers would have gravitated towards calling Mr. Dukes

6     without some involvement from Mr. Reyes after his arrest.

7          THE COURT:  Thank you.

8          Mr. DeMaria?

9          MR. DeMARIA:  Your Honor, first of all, Mr. Dukes was

10    staying at his girlfriend's house most of the time.  That is

11    why, for example, in my letter to the Court asking that

12    Mr. Reyes be allowed to move to a different apartment, I don't

13    make any mention of him, simply make mention of the mother, the

14    stepfather and the children.  I have no knowledge of him living

15    there until the government said so in his letter.  Mr. Reyes

16    told me that he was very infrequently, he was mainly at his

17    girlfriend's house and so that is my first point.

18         Secondly, again, with respect to the commonality of

19    the phone numbers, they are brothers.  It makes sense they

20    would call the same people, they would have the same friends.

21    Perhaps some of those friends, if you believe the government's

22    allegations, are drug addicts and what not which could explain

23    all of this.  But I mean there is actually nothing to suggest

24    that Mr. Reyes has been involved after his arrest.  There is no

25    credible evidence that we have seen.

ECF5reyC                         conference

1          THE COURT:  Anything else?

2          MR. QUIGLEY:  Yes, your Honor.

3          Mr. Dukes provided 1516 Rhinelander as his address

4    when he was arrested by NYPD on November 14th.  It is reflected

5    on the arrest report.  So, that's where he thought he was

6    living anyway.

7          THE COURT:  Anything else, Mr. DeMaria?

8          MR. DeMARIA:  One last point, your Honor.

9          I note, and as to the last two exhibits in my letter,

10   Mr. Reyes was in Florida when two of these alleged drug sales

11   occurred and he vehemently denies any allegations.  Christmas

12   is right around the corner, his children should not be deprived

13   of their father given the tenuous evidence put forward here

14   today.

15         THE COURT:  What do you say to the government's

16   representation that Mr. Reyes was on the phone with the

17   purported buyers and that the actual handoff of the narcotics

18   was done by other folks?  The fact that Mr. Reyes was in

19   Florida seems to be irrelevant.

20         MR. DeMARIA:  Again, your Honor, I have listened to

21   every single phone call on the wiretap and there are completely

22   different voices for the user of the 3079 phone and they can't

23   all be Mr. Reyes, and we are saying none of them are Mr. Reyes

24   and, of course, that is an issue for trial.

25         THE COURT:  Anything else?

ECF5reyC                    conference

1          MR. QUIGLEY:  No, your Honor.  Thank you.

2          THE COURT:  Thank you.

3          Certainly the three kilos is a changed circumstance

4   and the confirmation of Mr. Reyes' prior drug convictions is a

5   changed circumstance.  On those facts alone Mr. Reyes has not

6   carried his burden in a presumption case.  Added to that is the

7   arrest of Mr. Dukes.

8          As counsel has pointed out, there is a high

9   correlation between Mr. Cruz' 9568 phone and Mr. Reyes' 3079

10  phone.  And, the government represents that those were calls

11  relating to narcotics activity.

12          Mr. Dukes and Mr. Reyes lived in the same residence

13  from time to time and I agree with the government that it is

14  unlikely that the customers of Mr. Reyes would have gravitated

15  to Mr. Dukes without some input by Mr. Reyes.  Also, as the

16  government points out, Mr. Dukes and Mr. Reyes are half

17  brothers, they're hardly strangers.

18          Taking all of these factors into account, I find that

19  the defendant Reyes has not carried his burden in this

20  presumption case and that there are no circumstances which will

21  maintain the safety of the public.  Accordingly, Mr. Reyes is

22  ordered detained.

23          UNIDENTIFIED SPEAKER:  Oh my God, your Honor.  Please,

24  don't.  Don't.  Please.

25          THE COURT:  Thank you, ma'am.

ECF5reyC                        conference

1           UNIDENTIFIED SPEAKER:  Please, your Honor.  Don't do

2    it.  The horrible things I hear.  Holidays.

3           THE COURT:  Yes, ma'am.  I'm sorry to have to.

4           UNIDENTIFIED SPEAKER:  His babies, he has six kids.

5    Your Honor, please, don't do this.

6           THE COURT:  Yes, ma'am.

7           UNIDENTIFIED SPEAKER:  Please, your Honor.  Don't do

8    it.  Please, he has six kids.  Please.  Oh!

9           MR. DeMARIA:  Your Honor?

10           THE COURT:  Mr. DeMaria.

11           MR. DeMARIA:  May I ask that the Court decision be

12    stayed while we contemplate a potential appeal?

13           THE COURT:  No, sir.  I mean you may ask, but it is

14    denied.

15           MR. DeMARIA:  Thank you.

16           THE COURT:  Yes, sir.

17           UNIDENTIFIED SPEAKER:  Please.

18           THE COURT:  Thank you, Mr. Marshal.

19                              o0o

20

21

22

23

24

25