```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - x
                                       :
UNITED STATES OF AMERICA               :   OPINION AND ORDER
                                       :
    -v.-                                :   14 Cr. 483 (LAP)
                                       :
ISRAEL REYES,                          :
                                       :
                Defendant.             :
                                       :
                                       :
- - - - - - - - - - - - - - - - - - - x
```

LORETTA A. PRESKA, Senior United States District Judge:

Before the Court is Mr. Reyes' motion for compassionate release. (Dkt. no. 304.) Mr. Reyes filed a supplemental memorandum (dkt. no. 308), the Government opposed (dkt. no. 311), Mr. Reyes replied (dkt. no. 312), and Mr. Reyes provided an update, (dkt. no. 314). Mr. Reyes has also requested an appointment of counsel to assess "status points" under Amendment 821 to the Sentencing Guidelines and for a sentence reduction. (Dkt. no. 316.) Mr. Reyes' primary argument is that his asthma places him at increased risk of COVID-19. For the reasons set forth below, the motion for compassionate release is denied.

I. **Background**

    a. Mr. Reyes' Criminal Conduct

Between February and November 2014, Reyes conspired with others as a part of a drug trafficking organization to sell kilogram-quantities of heroin in and around the Bronx, New York.

(See Presencing Report, dated August 12, 2015 ("PSR") [dkt. 174] ¶ 19.)  During the period of his involvement, the organization was selling approximately $50,000 worth of heroin a week. (Id. ¶ 32.)

Reyes led the organization and personally profited from the sale of heroin.  (See Government Sentencing Memorandum, dated November 9, 2015 ("Gov't Sent'g Memo.") [dkt. no. 219] at 3.)  In his role as the leader of the organization, Reyes directed at least five participants in the transport and sale of heroin to the organization's customers who were mainly "mid- and street-level dealers."  (PSR ¶¶ 6, 20, 40.)  Reyes was "responsible for the highest drug amount within the conspiracy and was the leader who organized, facilitated, and likely financially gained the most from the drug-trafficking scheme." (Id. at 22.)  In its sentencing memorandum, the Government represented that $100,000 was a "conservative estimate of the proceeds that Reyes obtained as a result of the offense." (Gov't Sent'g Memo. at 6.)

Reyes and four of his co-conspirators were arrested on July 9, 2014.  (See PSR ¶ 31.)  On December 8, 2014, Reyes was charged by indictment with conspiracy to distribute and possess with intent to distribute 1 kilogram and more of heroin, in violation of Title 21, United States Code, Section 846.  (See Superseding Indictment, dkt. no. 45.)

b. The Guilty Plea and Sentencing

On May 13, 2015, Reyes pleaded guilty, pursuant to a plea agreement, to the lesser included offense of conspiring to distribute 100 grams and more of heroin in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B). (See dkt. no. 130 ("Plea Hearing Tr.") at 4:19-25.) In the plea agreement, the parties stipulated to an offense level of 33, which included a four-level leadership enhancement. (PSR ¶ 6.) The parties also stipulated to a criminal history category of III and a Guidelines range of 168 to 210 months imprisonment, with a mandatory minimum 60 months imprisonment. See id.

The Court held a sentencing hearing on November 12, 2015. (Dkt. no. 228.) At that hearing, Reyes' attorney argued for a below-Guidelines sentence of 60 months imprisonment — the mandatory minimum — and the Government argued for a within-Guidelines sentence. (Id. at 3:9-17, 5:8-9, 6:22-8:12.) With respect to the offense level, this Court explained that the total offense level was "adequate," however, this Court took note of the Government's assertion that Reyes's criminal history level category "probably does not adequately reflect the seriousness of his prior criminal history" because Reyes was previously allowed to plead to misdemeanors after felony arrests, thereby decreasing his criminal history category. (Id. at 9:10-10:3.) The Court

3

noted that "Mr. Reyes was given leniency in his prior three convictions, and in return, ran an enormous drug trafficking operation." (Id. at 10:18-23.) Ultimately, the Court concluded that the seriousness of the offense along with the nature of Reyes's prior conduct, the need to deter others, and the need to protect the public from further crimes of the Defendant warranted a serious sentence. This Court then imposed a within-Guidelines sentence of 168 months imprisonment to be followed by five years of supervised release. (Id. at 9:13-12:6.)

        c. Reyes' Custody Status and Release Request

Reyes is currently incarcerated at FCI Fort Dix ("Fort Dix"). The Bureau of Prisons ("BOP") currently anticipates that he will complete his term of federal imprisonment on January 23, 2027. The Government agrees that Mr. Reyes has exhausted his administrative remedies. (See dkt. no. 311 at 2).

As with most BOP facilities, Fort Dix witnessed a significant incidence of COVID. (Id.) Reyes' medical records show that, in late December 2020, he tested positive for COVID-19. (Id. at 3.) Specifically, Reyes was tested on December 21, 2020, and received positive results on December 24, 2020. (See Reyes Medical Records (2021) at 41.) Reyes then entered quarantine on December 30, 2020. (Id. at 8.) When he entered quarantine, Reyes reported that he was asymptomatic. (Id.) Reyes's medical records do not

indicate that he ever developed symptoms. (See id. at 3-8.) On January 15, 2021, Reyes tested negative for COVID-19. (Id. at 39.) According to Reyes' BOP medical records, he suffers from asthma, which he controls with an inhaler. (Id. at 23.) The PSR characterized the asthma as "mild," (PSR ¶ 78), and additional medical records attached to Reyes' motion characterize his asthma as "occasional," (dkt. no. 304 at 17). His asthma did not result in Reyes' experiencing severe symptoms from contracting COVID-19. (See dkt. no. 311 at 3).

**II.  Applicable Law**

Under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act (Pub. L. 115-391), the Court "may not modify a term of imprisonment once it has been imposed except" as provided by statute. As relevant here:

> the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i)  extraordinary and compelling reasons warrant such a reduction . . .

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A). The policy statement, which appears at Section 1B1.13 of the Guidelines, provides that a reduction of sentence is permitted if: "extraordinary and compelling reasons warrant the reduction," U.S.S.G. § 1B1.13(a)(1)(A); "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," id. § 1B1.13(a)(2); and "the reduction is consistent with this policy statement," id. § 1B1.13(a)(3). Section 1B1.13(b) goes on to describe multiple ways that a defendant can show "extraordinary and compelling reasons," but only two are relevant here:

(1) Medical Circumstances of the Defendant—

    (A) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

    (B) The defendant is—
       (i) suffering from a serious physical or medical condition,
      (ii) suffering from a serious functional or cognitive impairment, or
     (iii) experiencing deteriorating physical or mental health because of the aging process
    that substantially diminishes the ability of the defendant to provide self-care within the

6

>   > environment of a correctional facility and from which he or she is not expected to recover.
>
>   (2) Age of the Defendant—The defendant (A) is at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

U.S.S.G. § 1B1.13(b).

As the proponent of the motion, Mr. Reyes bears the burden of proving that "extraordinary and compelling reasons" exist under the above criteria to justify early release. See United States v. Butler, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue.").

**III. Early Release Is Not Warranted Because Reyes Has Not Demonstrated Extraordinary and Compelling Circumstances And Early Release Would Undermine His Original Sentence**

Mr. Reyes is not entitled to compassionate release.[1] While he does suffer from asthma and migraines, neither condition

---

[1] To the extent the defendant's pro se motion is construed as a request that the Court release him to home confinement, that request is denied. As the Court has recognized, pursuant to 18 U.S.C. § 3624, discretion to release a prisoner to home confinement lies solely with the Bureau of Prisons. See United States v. Jebara, 17-cr-672 (CS) (Dkt. no. 279) (order denying motion for compassionate release sentence reduction and noting that "[h]ome confinement under 18 U.S.C. § 3624(c) is a determination to be made by the Bureau of Prisons ("BOP"), not [footnote continued]

7

constitutes an "extraordinary and compelling" circumstance warranting early release. Further, in this case, any risk that may have been created by his preexisting conditions has been mitigated because Reyes has already contracted and recovered from the COVID-19 virus. In light of the lack of extraordinary and compelling circumstances and the reduced risk resulting from Reyes' recovery, releasing Reyes early on his sentence for leading an "enormous drug trafficking organization," (dkt. no. 228 at 10:18-23), is unwarranted.

Even if the Court found that Mr. Reyes had established "extraordinary and compelling reasons" warranting release, the Section 3553(a) factors counsel against early release. Those

---

[continued] the Court."). The CARES Act does not change that authority. See CARES ACT, Pub. L. No. 116-136, 134 Stat. 281, 516 (Mar. 27, 2020) ("During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau [of Prisons], the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of Title 18, United States Code, as the Director determines appropriate."); see also United States v. Patterson, 17-cr-118 (KPF), 2020 WL 2571044, at *4 n.3 (S.D.N.Y. May 21, 2020); United States v. Ogarro, 18-cr-373 (RJS), 2020 WL 1876300, at *6 (S.D.N.Y. Apr. 14, 2020); United States v. Rodriguez, 454 F. Supp. 3d 224, 228-29 (S.D.N.Y. 2020). This is so because, while Section 3582 permits a court to "reduce the term of imprisonment" where it finds "extraordinary and compelling" circumstances, 18 U.S.C. § 3582(c)(1)(A)(i), it is the BOP that determines "the place of the prisoner's imprisonment," id. §3621(b), including whether a portion of that term may be served "in home confinement," id. § 3624(c)(2).

factors include, inter alia: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; and (2) the need for the sentence imposed to (a) reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (b) to afford adequate deterrence to criminal conduct; and (c) to protect the public from further crimes of the defendant.  18 U.S.C. § 3553(a)(1)-(2).

First, the nature and circumstances of the offense and the need to protect the public from further crimes from this Defendant requires continued incarceration.  In an attempt to make money, Mr. Reyes was a leader of a criminal organization that injected substantial quantities of heroin into his community.  This was an exceedingly serious crime.  In addition, as the Court noted at sentencing, Mr. Reyes had previously been allowed to plead to two misdemeanors after felony arrests and, despite that leniency, continued to break the law while running an enormous drug trafficking operation.  (See dkt. no. 228 at 9:10-10:3.)  Thus, Mr. Reyes' history indicates a continuing need to protect the public from further crimes by him.

In addition, the need to avoid unwarranted sentencing disparities, see 18 U.S.C. § 3553(a)(6), also counsels against early release.  At sentencing, the Court distinguished Mr. Reyes from his co-defendants based on his role as a leader of the drug

trafficking organization and because his criminal history did not adequately reflect the seriousness of his prior criminal conduct. (See dkt. no 228 at 9:13-10:3.)  Granting Mr. Reyes early release would significantly eliminate the difference between his sentence and that of his less culpable co-defendants. Thus, this factor also counsels against early release.

**IV. Conclusion**

For the reasons stated above, Mr. Reyes' motion for compassionate release, (dkt. no. 304), is denied.  The portion of Mr. Reyes' request for appointment of counsel, (dkt. no. 316), regarding a motion for compassionate release is accordingly denied as moot.  However, the Court will appoint CJA counsel to assess Mr. Reyes' legal options under Amendment 821 of the Sentencing Guidelines.

The Clerk of the Court shall close docket entries 304 and 311, and shall mail a copy of this order to Mr. Reyes.

**SO ORDERED.**

Dated:   New York, New York
         December 4, 2023

_____
LORETTA A. PRESKA
Senior United States District Judge

10